FILED
U.S. District Court
District of Kansas
09/14/2026
Clerk, U.S. District Court
By: SND Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ADRIAN NICHOLAS ZONGKER,**

**Plaintiff,**

**v.** **CASE NO. 26-3252-JWL**

**JANNA L. GORMAN, et al.,**

**Defendants.**

**MEMORANDUM AND ORDER TO SHOW CAUSE**

Plaintiff Adrian N. Zongker is hereby required to show good cause, in writing, to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein. Plaintiff is also given the opportunity to file an amended complaint to cure the deficiencies. Plaintiff's Motion to Supplement Complaint (Doc. 4), Motion for Additional Relief (Doc. 5), second Motion to Supplement Complaint (Doc. 6), second Motion for Additional Relief (Doc. 7), and Motion to Add Jurisdiction (Doc. 8) are denied, as discussed below.

## I. Nature of the Matter before the Court

Plaintiff is a state prisoner at the El Dorado Correctional Facility ("EDCF") in El Dorado, Kansas. He proceeds *pro se* and *in forma pauperis*.

Plaintiff filed a 49-page Complaint (Doc. 1). The Complaint is repetitive, and some parts are illegible. Plaintiff describes an incident that occurred on February 3, 2026, at EDCF. There was some confusion about whether Plaintiff was eligible for the dayroom or on room restriction,

but he was eventually told he could go to the dayroom at 5:15 p.m. Then, CSI Gorman told Plaintiff he was to be pat searched. Plaintiff questioned why he was singled out for searching, and he "started to resist." SST arrived and tackled and kicked him. He was taken to the shower and strip searched. They cut off his sweatshirt (purchased for $25) and prayer beads. Plaintiff was then moved to a different cell and had to leave his property behind. Plaintiff finally received his property on February 5, 2026, but about $310 worth was missing. He put in a property claim but has not received most of the missing property. Plaintiff asserts violation of his Fourth Amendment rights.

Plaintiff was seen by medical after the incident at 9:40 p.m. on February 3 when he started to have rib pain. The nurse said the rib was not broken but to follow up with a sick call in the morning. CSI Henderson refused to let him go to the sick call. Henderson also told Plaintiff he might or might not get lunch. Plaintiff then "started fussing about this indignity." Id. at 7. He was fed last, hours after everyone else. Plaintiff states that he was in pain for 10 days without adequate treatment. He alleges violation of his Eighth Amendment rights.

Plaintiff also complains that he was "coerced" into pleading guilty to a disciplinary charge (DR 26-02-018). While he does not make it clear, it appears the charge resulted from the February 3 search and involved a homemade weapon and a photo album with an inappropriate photo. Plaintiff says he was promised he would get back his photo album and mirror if he pled guilty, but he still has not received the items. The guilty plea got him 14 days segregation, a $15 fine, and 30 days restriction for the weapon, as well as a verbal warning on the inappropriate photo. He later found out that due to the weapon, he got an additional sanction of OSR status, causing him to be unable to work.

It further appears that Plaintiff reported a sexual assault by his cellmate at some point and was moved to a cell on his own. He complains that the cell he was moved to had no power outlet, cable, or telephone. Plaintiff asserts that this violated his Eighth Amendment rights.

Plaintiff names the following defendants: Janna Gorman; Robert C.B. Henderson; Mary K. Greenwood; Emily Whitley; Stephen Stookie; Jarris Perkins; Darcie Holthaus; Kenneth Corley; Matthew Gumm; James Henerson; Tashua Fiels; and (fnu) Davis. He seeks a proper property claim investigation; the value of the property lost ($240); six months state pay for the OSR sanction ($153.60); the disciplinary report and $15 sanction dismissed; $6 for each day in segregation ($1080) to compensate for his pain and suffering; $6,000 for pain and suffering from the rib injury; replacement of his lost KDOC ID ($5); and the lifting of OSR restrictions. (Doc. 1, at 26.)

**II. Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts

all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at

1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

After reviewing Plaintiff's Complaint, the Court finds that the Complaint is subject to dismissal for the following reasons.

### A. Claim for Personal Property

The Due Process Clause of the Fourteenth Amendment guarantees due process when a person may be deprived of life, liberty, or property. U.S. Const. amend. XIV, § 1. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976) (citing *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965)); *Dusenbery v. United States,* 534 U.S. 161, 167 (2002) (quoting *United States v. James Daniel Good Real Property,* 510 U.S. 43, 48 (1993)) ("individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard.'"). However, "[t]he Fourteenth Amendment does not protect against all deprivations" of property but only against those "accomplished 'without due process of law.'" *Baker v. McCollan,* 443 U.S. 137, 145 (1979); *Zinermon v. Burch,* 494 U.S. 113, 126 (1990) (A constitutional due process violation that is actionable under § 1983 "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process."); *see also Hudson v. Palmer,* 468 U.S. 517,

533 (1984) (recognizing a due process deprivation does not occur "until and unless" the State provides or refuses to provide a suitable post-deprivation remedy). In most circumstances, pre-deprivation process is expected. *See, e.g., Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 611 (1974). However, where it is impossible to provide a meaningful pre-deprivation hearing, the state must provide a meaningful post-deprivation hearing. *Parratt v. Taylor,* 451 U.S. 527, 541 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 330 (1986).

In *Parratt,* the United States Supreme Court ruled that when a plaintiff alleges deprivation of a property interest occurring as a result of "a random, unauthorized act," the Fourteenth Amendment's due process requirement is satisfied if the state provides an adequate post-deprivation remedy. *Id.* at 541–43; *Hudson,* 468 U.S. at 533; *Zinermon,* 494 U.S. at 128 ("*Parratt* and *Hudson* represent a special case ... in which postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide."); *Palmer v. Unified Government of Wyandotte County/Kansas City, Kansas,* 72 F. Supp. 2d 1237, 1252 (D. Kan. 1999). Though *Parratt* involved negligent deprivations of property, the Court later held that this reasoning also applied to intentional deprivations of property. *Hudson,* 468 U.S. at 533.

Accordingly, property loss claims are not cognizable under § 1983 in federal court when a state's post-deprivation remedies are adequate to protect a plaintiff's procedural due process rights. Where states provide an adequate remedy, that remedy itself constitutes the due process required by the Fourteenth Amendment. *Parratt,* 451 U.S. at 543–44; *McCormick v. City of Lawrence, Kansas,* 253 F. Supp. 2d 1172, 1198–99 (D. Kan. 2003) (citing *Hudson,* 468 U.S. at 530–33), *aff'd,* 99 F. App'x 169 (10th Cir. 2004); *see also Smith v. Colo. Dep't of Corr.,* 23 F.3d 339, 340 (10th Cir. 1994) ("Fourteenth Amendment due process guarantees pertaining to property are satisfied

when an adequate, state postdeprivation remedy exists for deprivations occasioned by state employees."). Therefore, in order "to state a § 1983 claim, [Plaintiff] was required to plead the inadequacy or unavailability of a post deprivation remedy." *Montana v. Hargett,* 84 F. App'x 15, 16 (10th Cir. 2003) (unpublished) (citing *Durre v. Dempsey,* 869 F.2d 543, 548 (10th Cir. 1989) (affirming dismissal of plaintiff's due process deprivation of property claim, stating that "[i]n order to state a claim under § 1983, a complaint must allege facts sufficient to show deprivation, in this case the lack of an adequate state remedy")).

Kansas provides post-deprivation remedies to persons who believe they have suffered a tortious loss at the hands of state officials. For example, K.S.A. § 60–1005 provides a procedure for actions to recover personal property and specifically authorizes a replevin action for property in the custody of an officer as a result of any legal process. *See* K.S.A. § 60–1005(c) ("If the property the possession of which is sought is in the custody of an officer under any legal process it shall nevertheless be subject to replevin under this section"). Kansas law also provides for conversion actions (*see, e.g., Herndon v. City of Park City, Kan.,* 2007 WL 3171524, *3 (assertion that "property has either been lost or disposed of, or remains in possession of defendant or its agents" represents the "textbook definition of conversion")) and claims under the Kansas Tort Claims Act. In addition, Kansas has a statutory scheme for returning property seized as evidence (see K.S.A. 22-2512) and the Kansas Standard Asset Seizure and Forfeiture Act (see K.S.A. 60-4101, et seq.).

These types of state procedures have generally been held to be sufficient to satisfy the requirements of due process. *Parratt,* 451 U.S. at 543–44; *see also Thompson v. City of Shawnee, 464 F. App'x 720, 724 (10th Cir. 2012); Harmon v. Williams,* 77 F. App'x 440, 441–42 (10th Cir. 2003) (unpublished); *Bridgeforth v. Field,* 153 F.3d 726, *2 (10th Cir. July 17, 1998) (Table), *cert.*

*denied,* 525 U.S. 1154 (1999). Courts in this district have specifically determined that these Kansas procedures are adequate post-deprivation remedies for the type of harm alleged in Plaintiff's Complaint. *Roman v. FNU LNU Unknown State & Loc. Offs., Barton Cty., Kan.*, No. 12-3065-SAC, 2012 WL 1970384, at *4–5 (D. Kan. June 1, 2012) (citing *Herndon v. City of Park City, Kan.,* No. 07-1065-MLB, 2007 WL 3171524, at *3 (D. Kan. Oct. 25, 2007)). These remedies provide all the process that is due to Plaintiff.

The Court finds that Plaintiff fails to state a plausible federal constitutional claim for the loss of personal property because adequate post-deprivation remedies are available to Plaintiff in state court.

**B. Claim of Unreasonable Search**

Plaintiff argues that his Fourth Amendment rights were violated because he was searched at random and without probable cause on February 3, 2026, and when the search escalated to a strip search in the shower.

Although the Supreme Court has foreclosed any Fourth Amendment challenge to the search of a prison cell, the court "has recognized a qualitative difference between property searches and searches of a prisoner's person." *Dunn v. White*, 880 F.2d 1188, 1191 (10th Cir. 1989). The Supreme Court in *Bell v. Wolfish*, preserved a prisoner's privacy interest in the integrity of his own person, and applied a traditional Fourth Amendment analysis to a constitutional challenge by prisoners to personal body searches. *Dunn*, 880 F.2d at 1191 (citing *Bell v. Wolfish*, 441 U.S. 520, 558 (1979)).

The Supreme Court developed a balancing test to evaluate the reasonableness of a strip search of a prisoner or pretrial detainee. *Bell*, 441 U.S. at 559. Factors to be considered in the balancing process include: (1) the scope of the particular intrusion; (2) the manner in which the

search is conducted; (3) the justification for initiating it; and (4) the place in which the search is conducted. *Id.* Given these considerations, *Bell* held that visual body-cavity strip searches without probable cause were reasonable in light of correctional security needs. *Id.* at 559–60; *see also Leek v. Miller*, 698 F. App'x 922, 926 (10th Cir. 2017) (unpublished) (stating that "strip searches of prisoners are not per se prohibited") (citing *Farmer v. Perrill*, 288 F.3d 1254, 1260 (10th Cir. 2002) (recognizing that prisoner strip searches must be "reasonably related to a legitimate penological interest" (emphasis omitted))).

Plaintiff first objects to the allegedly random nature of the pat search and then to the strip search conducted in the shower after he questioned the pat search. He argues that EDCF officials needed probable cause to conduct the pat search. This is not correct; even strip searches of prisoners do not require probable cause if reasonably related to a legitimate penological interest. The Court in *Bell*:

> emphasized that "preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of convicted prisoners." . . . . "Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel . . . . Accordingly, we have held that even when an institutional restriction infringes a specific constitutional guarantee, . . . the practice must be evaluated in light of the central objective of prison administration, safeguarding institutional security." . . . Thus, on issues of "internal order and discipline" or "institutional security," courts should accord "wide-ranging deference" to prison officials, unless there is "substantial evidence in the record to indicate the officials have exaggerated their response."

*Dunn*, 880 F.2d at 1191 (quoting *Bell*, 441 U.S. at 546–48) (internal citations omitted). Certainly searching prisoners for weapons is an appropriate action to safeguard institutional security, and Plaintiff's objections are undermined by the fact that officials apparently discovered that he had a weapon when he was searched. Plaintiff's Fourth Amendment claim is subject to dismissal.

**C. Claims related to Grievances**

Plaintiff complains about the denial of his grievances related to his personal property. He also mentions being blocked from using the grievance system for property loss claims. It is unclear whether these are separate claims.

In any event, Plaintiff fails to state an actionable claim under § 1983 because prisoners do not have a constitutional right to file grievances. "[T]he state's voluntary provision of an administrative grievance process [does not] create a liberty interest in that process" or confer constitutionally protected substantive rights upon the inmates. *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *Burnett v. Allbaugh*, 715 F. App'x 848, 851 (10th Cir. 2017) ("There is no independent constitutional right to state administrative grievance procedures.").

Moreover, Plaintiff names Defendant Holthaus on the basis of her denial of his grievances. A viable § 1983 claim must show each named defendant caused a violation of the plaintiff's constitutional rights. *Walker v. Mohiuddin*, 947 F.3d 1244, 1249 (10th Cir. 2020). However, the allegation that an official denied a grievance or failed to respond to a grievance is not sufficient to show the required personal participation. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (A "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *Phillips v. Tiona*, 508 F. App'x 737, 744 (10th Cir. 2013) ("Merely sending grievances to a warden is not enough to attach liability, and the warden's response signified nothing more than a reasonable reliance on the judgment of prison medical staff."); *see Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012). Plaintiff fails to state a claim against Defendant Holthaus or any other defendant named because of their involvement in the grievance process.

**D. Eighth Amendment Claims**

Plaintiff mentions two Eighth Amendment claims. First, he argues he received inadequate medical care for a rib injury. Second, he argues he was subjected to cruel and unusual punishment when he was placed in the cell without an electrical outlet, cable, or phone.

**1. Medical Care**

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishments. The United States Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Boyett v. County of Washington*, 282 F. App'x 667, 672 (10th Cir. 2008) (citing *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)). The "deliberate indifference" standard has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991); *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). In the objective analysis, the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999); *Martinez*, 430 F.3d at 1304 (quoting *Farmer*, 511 U.S. at 834 (quotation omitted)).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Martinez*, 430 F.3d at 1304 (citing *Sealock v. Colorado*, 218 F.3d

1205, 1209 (10th Cir. 2000) (quotation omitted)). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (quotation omitted)).

Plaintiff fails to meet the objective component of the deliberate indifference analysis. Plaintiff alleges that he was having rib pain in the evening after the February 3 incident. He was promptly evaluated by a nurse, who told him his rib was not broken, indicating it was bruised. *See Abernathy v. Anderson*, 395 F. Supp. 3d 123 (D. Mass. 2019) (prisoner's bruised but unbroken skin with superficial lacerations not needing stitches was not a serious medical need). Plaintiff further alleges he was not allowed to go to the morning sick call, and he experienced pain for a week and a half. While pain can qualify as a serious medical need, courts have generally found that the pain experienced must be "extreme," "debilitating," "torturous," "severe," or "excruciating." *See Oxendine v. Kaplan*, 241 F.3d 1272, 1278-79 (10th Cir. 2001); *Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006) (overruled on other grounds); *Mata v. Saiz*, 427 F.3d 745, 754 (10th Cir. 2005); *Perotti v. Serby*, 786 F. App'x 809, 814 (10th Cir. 2019); *Burroughs v. Mitchell*, 325 F. Supp. 3d 249 (N.D. N.Y. 2018). Where, as here, a prisoner merely complains of "pain," he fails to state an Eighth Amendment claim. *See Beers v. Ballard*, 248 F. App'x 988, (10th Cir. 2007) (finding that complaints of pain with no indication of the nature or severity did not constitute substantial harm).

**2. Conditions of Confinement**

A prison official violates the Eighth Amendment when two requirements are met. *Farmer*, 511 U.S. at 834. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.*

To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez*, 430 F.3d at 1304.

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle*, 429 U.S. at 103. The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted). Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834. Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id*. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id.* It is not enough to establish that the official should have known of the risk of harm. *Id.*

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id*. As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id.* (citations omitted).

Plaintiff alleges that he was housed in the cell without an electrical outlet, cable, or phone for some period of time. Plaintiff has not shown that the conditions were more than uncomfortable – that they rose to the level of "conditions posing a substantial risk of serious harm" to his health or safety. *Farmer,* 511 U.S. at 834. Plaintiff should show good cause why his Eighth Amendment claim based on his conditions of confinement should not be dismissed for failure to state a claim.

**E. Claim related to Disciplinary Charge**

Plaintiff complains about the disciplinary report he received after the February 3 incident. "The Fourteenth Amendment prohibits states from depriving citizens of liberty without due process of law." *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005). This guarantee applies to prison inmates, but "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The Supreme Court has established that protected liberty interests are at issue in the prison setting only when an inmate is subjected to (1) conditions that "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of

prison life" or (2) disciplinary actions that "inevitably affect the duration of his sentence." *Harrison v. Morton*, 490 F. App'x 988, 992 (10th Cir. 2012) (quoting *Sandin*, 515 U.S. at 484, 487).

Plaintiff does not allege that the disciplinary action affected the duration of his sentence or that the punishment (14 days segregation, a $15 fine, 30 days restriction for the weapon, a verbal warning for the inappropriate photo, and OSR status) imposed atypical and significant hardship on him in relation to the ordinary incidents of prison life such that a protected liberty interest was at issue. *See Beauclair v. High*, No. 14-3020-SAC, 2015 WL 93636, at *3 (D. Kan. Jan. 7, 2015) (citing *Hornsby v. Jones,* 392 F. App'x 653, 655 (10th Cir. 2010), for the proposition that punishments of fines and segregation for a limited number of days generally fail to implicate a protected liberty interest); *see also Marshall v. Laird*, 2013 WL 3226632, at *3 (D. Kan. June 25, 2013) ("[A] denial of privileges does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life, and consequently no liberty interest is at stake where the inmate may be sanctioned with a loss of privileges only."); *Blum v. Federal Bureau of Prisons*, 189 F.3d 477, 1999 WL 638232, at *3 (10th Cir. Aug. 23, 1999) (concluding that 90-day disciplinary segregation which left inmate without "store privileges, radio, phone calls, etc." were "such conditions ... not different in such degree and duration as compared with 'the ordinary incidents of prison life' to be a protected liberty interest under the Due Process clause." (citations omitted)).

Plaintiff fails to state an actionable claim resulting from the disciplinary charge.

**F. Personal Participation**

An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v.*

*Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006); *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

An official's liability may not be predicated solely upon a theory of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995). To be held liable under § 1983, a supervisor must have personally participated in the complained-of constitutional deprivation. *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).

As mentioned above, the allegation that an official denied a grievance or failed to respond to a grievance is not sufficient to show personal participation. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (A "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *see Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012).

Plaintiff does not allege facts showing the personal participation of each named defendant in the alleged constitutional violations. Any defendant whose personal participation is not demonstrated is subject to dismissal from this action.

**G. Claim based on Alleged PREA Violation**

Plaintiff appears to be attempting to bring a claim based on alleged PREA violations. However, a person cannot bring a private lawsuit for violation of the PREA. The Prison Rape Elimination Act, 42 U.S.C. § 15601-15609, "authorizes the reporting of incidents of rape in prison, allocation of grants, and creation of a study commission," but there is nothing in the PREA to indicate that it created a private right of action, enforceable under § 1983. *Porter v. Jennings*, No. 1:10-cv-01811-AWI-DLB PC, 2012 WL 1434986, at *1 (E.D. Cal. Apr. 25, 2012); *see also Burke v. Corr. Corp. of Am.*, No. 09-3068-SAC, 2010 WL 890209, at *2 (D. Kan. Mar. 10, 2010); *Moreno v. Corizon Medical Provider*, No. 16-CV-01063, 2017 WL 3052770, at *2 (D.N.M. June 21, 2017); *Moorman v. Herrington,* No. 4:08CV-P127-M, 2009 WL 2020669, at *2 (W.D. Ky. 2009)(collecting cases); *De'lonta v. Clarke,* No. 7:11–cv–00483, 2013 WL 209489, at *3 (W.D. Va. Jan. 14, 2013); *Chinnici v. Edwards*, No. 1:07-cv-229, 2008 WL 3851294, at *3 (D. Vt. Aug. 13, 2008). "Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights privileges, or immunities secured by the Constitution and laws.'" *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). "In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Id.* (emphasis in original) (citing *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106 (1989)).

The Court concludes that, as a matter of law, Plaintiff cannot pursue a § 1983 claim based on an alleged failure to comply with the PREA.

**IV. Motions to Supplement Complaint**

Also before the Court are five requests from Plaintiff to supplement the Complaint by adding assorted claims, defendants, and relief. (Docs. 4, 5, 6, 7, and 8.)

The motions are denied. Plaintiff may not simply supplement his Complaint. To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15.

**V. Response and/or Amended Complaint Required**

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein. Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.

To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the Court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint. Plaintiff must write the number of this case (26-3252-JWL) at the top of the first page of his amended complaint, and he must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

The amended complaint should concisely (1) raise only properly joined claims and defendants; (2) allege sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) allege sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Complaint and may be dismissed without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED THAT** Plaintiff is granted until **October 14, 2026,** in which to show good cause, in writing, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED THAT** Plaintiff is granted until **October 14, 2026,** in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

**IT IS FURTHER ORDERED THAT** Plaintiff's Motions to Supplement Complaint (Docs. 4, 5, 6, 7, and 8) are **denied**.

The Clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated September 14, 2026, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**